In re R.L. THOMAS, Jr., Debtor.

UNITED STATES of America,
Appellant,

v.

R.L. THOMAS, Jr., Appellee.

Bankruptcy No. 587–50118.
Civ. A. No. CA 5–88–0112–C.

United States District Court,
N.D. Texas,
Lubbock Division.

Oct. 14, 1988.

Marvin Collins, U.S. Atty., Lubbock, Tex., and Nancy M. Koenig, Asst. U.S. Atty., and Daniel A. Bowen, Asst. Regional Atty., Temple, Tex., Office of the General Counsel, U.S. Dept. of Agriculture, of counsel, for appellant.

Ray Fargason, Trustee, of Brown, Harding, Brown & Rice, Lubbock, Tex., for trustee.

Gerald Huffaker, of Huffaker, Green & Huffaker, Tahoka, Tex., for debtor/appellee.

CUMMINGS, District Judge.

### FACTUAL BACKGROUND

The United States appeals the order and memorandum opinion entered March 30, 1988, by the bankruptcy court which allowed in part and denied in part the United States' motion for relief from the automatic stay in order to set off certain crop disaster payments. *See In re R.L. Thomas, Jr.,* 84 B.R. 438 (Bankr.N.D.Tex.1988). These disaster payments arise from the Agricultural Stabilization and Conservation Service (ASCS) where the debtor signed a contract on April 16, 1986, with the Commodity Credit Corporation ("CCC") to participate in the ASCS program for the 1986 crop year. Congress authorized disaster payments under the Agriculture, Rural Development, and Related Agencies Appropriations Act of 1987 (the "1986 Act") on October 18, 1986. This Act paid approximately 74 percent of a participating farmer's lost production. On May 27, 1987,

Congress passed a further Act entitled the Farm Disaster Assistance Act of 1987 ("1987 Act"), which authorized supplemental payments for 1986 crops up to a 100 percent of lost production.

However, on February 17, 1987, the debtor filed a chapter 7 petition and a trustee was appointed. As of the date of the debtor's petition, he owed Farmers Home Administration ("FmHA"), an agency within the United States Department of Agriculture, $77,961.61; the Small Business Administration ("SBA"), an agency of the United States, $172,141.91; the CCC, an agency within the Department of Agriculture, $361.12; and the Internal Revenue Service, $4,635.10 plus penalties and interest for 1985 income taxes and $12,653.00 for 1986 income taxes. The FmHA and SBA also held liens on 300 acres of land. The disaster payments were held in abeyance by the Department of Agriculture.

The United States Attorney filed a motion for relief from the automatic stay on behalf of FmHA, SBA and CCC in order to offset the disaster payments against the debtor's pre-petition obligations owing to the three agencies. The parties submitted the matter to the bankruptcy court on stipulated facts so no evidentiary hearing was held.

The FmHA, CCC and SBA's debts, subject to the pending motion to lift the stay, were discharged on June 15, 1987, through the debtor's customary bankruptcy discharge. The IRS's liens potentially survived discharge pursuant to 11 U.S.C. §§ 507(a)(7) and 523(a)(1).

### Contested Order

In deciding the motion to lift stay, the Honorable Judge Akard found that mutuality of parties, a requisite for setoff, was present and therefore the obligations owed to the debtor by one governmental unit could be offset against the debtor's obligations to a different governmental unit. The bankruptcy court, however, ordered the stay lifted and offset to occur *only* as to the payments arising under 1986 Act and not the supplemental payments from the 1987 Act. The court found that the

agencies had no claim to payments under the 1987 Act because that act had not been passed by Congress at the time the debtor filed bankruptcy. Therefore, the court ordered that the supplemental payments be paid to the trustee who succeeded to the debtor's rights.

The bankruptcy court also determined that the regulations, passed by the United States Department of Agriculture and incorporated in 7 C.F.R. part 13 regarding the priority of debts in a setoff situation for these payments, were not binding on the court and did not apply. Finally, under the authority of the bankruptcy court to marshal assets and the dictates of 11 U.S.C. § 106, the court found that *all* agencies of the United States Government (including the IRS who was not one of the movants) should share in the setoff monies on a *pro rata* basis after FmHA and SBA foreclosed on other collateral.

### Appellate Grounds

The United States appeals the bankruptcy court's decision on five issues. First, the United States contends it is secured in its right to setoff *all* of the disaster payments, and second, the bankruptcy court erred in ordering the 1987 disaster payments be made to the trustee. Further, Appellant argues that the court erred in denying the United States' motion to modify the stay in full and by ordering a *pro rata* setoff between the four governmental agencies. Lastly, the United States contends that the bankruptcy court erred in denying its motion for a new trial.

Thus, the issues on appeal can be narrowed to two basic questions:

1) Are the 1987 payments pre-petition rights and therefore subject to setoff; and

2) Is *pro rata* sharing in the offset monies among the four government agencies correct?

### Jurisdiction and Standard of Review

This court has jurisdiction to consider the appeal pursuant to 28 U.S.C. § 158. A bankruptcy court's findings of fact are subject to a clearly erroneous standard of re-

view. Federal Rule of Civil Procedure 52(a); *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Therefore, this court does not have the authority to decide factual issues *de novo*. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The bankruptcy court's conclusions of law, however, are subject to plenary review. *Matter of Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 209 (5th Cir.1983).

### Pre-petition versus Post-petition

■ The government's right to setoff pre-petition debts and assets, dictated by 11 U.S.C. § 106, is subject first to obtaining relief from the automatic stay under 11 U.S.C. § 362(a)(7). *I.R.S. v. Norton*, 717 F.2d 767, 772 (3rd Cir.1983); *In re Hill*, 19 B.R. 375 (Bankr.N.D.Tex.1982). Lifting the stay occurs for cause, upon sufficient proof that a party *with an interest* in the property is not provided with adequate protection of its interest or the debtor does not have any equity in the property and the property is not necessary for reorganization. 11 U.S.C. § 362(d). Since no reorganization was attempted in the case at bar, the issue in lifting the stay in this case is whether or not the government agencies have an interest in the property.

The filing of bankruptcy by the debtor establishes a dividing line between pre- and post-petition debts and rights. A debtor's pre-petition rights and assets are setoff or used to pay pre-petition debt while post-petition rights and assets are applied to post-petition debt.

Appellants claim the rights to payment and setoff of the 1987 monies were created pre-petition due to the signing of the contract that generically allowed for setoff of ASCS payments but failed to reference any amount. Appellants rely on *In re Parrish*, 75 B.R. 14 (N.D.Tex.1987), in which the court followed the legal rational of *In re Matthieson*, 63 B.R. 56 (D.Minn.1986), in determining that certain CCC payments where pre-petition and therefore subject to setoff. Appellants contend that their claim to the 1987 payments existed at the time of filing bankruptcy although the amount was undetermined until after the filing of the bankruptcy petition.

Certainly the 1987 payments were undetermined in amount at the time of bankruptcy—in fact, they were not even in existence. Only rights to the 1986 payments existed at the time of filing bankruptcy. Rights to the 1987 payments were created after the filing of bankruptcy. When signing the CCC's contract, the debtor surmised that some payments would be made but did not know the extent until the 1986 Act was passed. Such act was prior to the filing of bankruptcy. The debtor did not know of any rights under the 1987 Act when he filed bankruptcy and apparently had no expectation of further ASCS payments when determining his need to file bankruptcy. Entitlement to payments under the 1987 Act came after the filing of the bankruptcy petition and is clearly a post-petition right.

If this Court were to follow Appellants' argument that the rights existed pre-petition but only the amount was undetermined, the holdings in *Parrish* and *Matthieson* are stretched to an impermissible level. *Parrish* and *Matthieson* decisions require that an unliquidated obligation must be a "definite liability" and "absolutely owing" at the time of the bankruptcy filing. Nowhere can we find that the 1987 money was absolutely owing in February, 1987. It was not even in existence until May, 1987. The debtor cites *In re Howell*, 4 B.R. 102 (M.D.Tenn.1980), and *Avant v. United States*, 165 F.Supp. 802 (E.D.Va. 1958), as opposing authority where agencies were not entitled to offset future disability or retirement benefits. These cases, as the one at bar, involve the denial of setoff of future, unmatured payments to which the debtor has no rights until the date they accrue. Here, the debtor had no right to 1987 payments until after filing the bankruptcy petition.

Although the subsequent 1987 Act may, in the government's eyes, have only removed the dollar limitation for disaster payments, the debtor's filing of bankruptcy ended the government's rights to offset

any assets created after the date of the bankruptcy filing. Its claim for offset is limited to those dollars available as of the date of the bankruptcy filing and arising before the intervening act of filing bankruptcy. The court's intention in *Parrish* is not the result the government urges the Court to apply in the case at bar.

The government also argues that no rights to the 1987 payments would exist *but for* the pre-petition contract and since the contract authorizes offset, all the monies are subject to the pre-petition debts owed these agencies. This argument overlooks the important demarcation line established by the bankruptcy filing—no further rights are afforded pre-petition obligees once bankruptcy is filed. Such obligees are limited to those assets existing *at the time of filing*. This limitation is consistent with the *Parrish* and *Mathieson* decisions which require definite liabilities. The bankruptcy court did not impermissibly modify the terms of the pre-petition contract by not lifting the stay as to the 1987 money. The money owed under the contract is subject to setoff under the contract terms, but the intervening bankruptcy limits those dollars to those existing at the time of the filing of bankruptcy.

Therefore, this Court upholds the bankruptcy's ruling that only the 1986 payments are subject to the motion to lift stay and that the government does not have a security interest in the post-petition payments created in May, 1987. Rights arising after the filing bankruptcy are property of the debtor in possession or trustee and are subject only to post-petition debts.[1]

The bankruptcy court did not err in finding that the 1987 disaster payments belong to the trustee. The stay was not lifted as to the 1987 payments and therefore, the money remains property of the debtor's estate. No inconsistency or reversible error exists in the bankruptcy court's statements that the trustee stands in the debtor's shoes for receipt of the money and that the trustee should receive the 1987 payments, even though the trustee had not plead or asserted an adversary action for such money. The bankruptcy court's ruling only expresses what would naturally occur when the automatic stay is not lifted as to certain property.

### Pro Rata Sharing

Next, the United States challenges the court's ruling that all four agencies share *pro rata* in the offset money. This ruling appears to change the terms of the pre-petition contract which expressly incorporates the regulations promulgated by the Department of Agriculture, including those establishing a priority of payment. The government argues that *pro rata* sharing creates discrimination among the government agencies since under Bankruptcy Rule 9041 the IRS can offset refunds it holds, but such refunds are not available to offset by other governmental agencies. This argument fails for two reasons—first, that rule is a local bankruptcy rule and is no longer in existence under the local rules. Second, such rule, while in existence, only applied to Chapter 11 reorganizations. Therefore the rule is not applicable to the case at bar.

■ The United States also argues that the CCC is required to orderly administrate the program and its administration is being interfered with by this bankruptcy court's order. 15 U.S.C. § 714b(c) is an anti-injunction statute which states in part that the CCC:

[m]ay sue and be sued, but that no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property.

---

**1.** A recent opinion also by Judge Akard gave a debtor part of the ASCS payments for his labor and expenses in producing the crop. Such a ruling reflects that the contract is not an executory one as the government contends. Once the farmer signs the contract, a great deal of labor and expenses of seed, irrigation, weed-control, and harvesting are still required. A farmer would not be entitled to ASCS payments if he never plants or tends his crops after signing such a contract. Therefore, agency debts may not be entitled to 100% setoff of ASCS payments since no rights would exist *but for* the farmer's efforts, even though such agencies have an interest in the contract proceeds pursuant to the contract terms providing for setoff. *In re Buske,* 75 B.R. 213 (N.D.Tex.1987).

*See Romeo v. United States*, 462 F.2d 1036, 1038 (5th Cir.1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (a similar SBA statute violated when court ordered specific performance). This anti-injunction statute is not limited in application to only non-bankruptcy cases.

Some conflict may then be perceived between the bankruptcy court's equitable powers to marshal assets and wind up bankruptcy estates and the CCC's charge to administer the ASCS program. True, the bankruptcy code requires setoff under 11 U.S.C. § 106. This Court, however, does not see the conflict in the setoff as required under § 106 and the CCC's procedures for setoff. The code only requires *offset* under § 106 but does not set any *priorities* for which governmental unit is paid first. The CCC's administration of the program sets up notice guidelines, the procedure for setting off monies, and the priority of payments among competing government agencies. The regulations promulgated to administer the ASCS program fill the gap where the bankruptcy code is silent.

The bankruptcy court's published opinion cites no authority for *pro rata* sharing between the agencies other than the mandate in § 106 to offset governmental debts and the court's general authority to marshal assets. See *In re Mid–West Motors*, 82 B.R. 439 (N.D.Tex.1988). The bankruptcy court found that the regulations in 7 C.F.R. part 13 are not binding without discussing why. Judge Jackwig, Chief Bankruptcy Judge of the Southern District of Iowa, in *In re Mehrhoff*, 88 B.R. 922 (1988), uses 31 U.S.C. § 3716(c)(2) as authority for the same conclusion, although she criticizes the *Thomas* court's opinion on other grounds. Section 3716(c)(2) states that administrative offset, established by prior subparagraphs of § 3716, does not apply if:

a statute explicitly provides for or prohibits using administrative offset to collect the claim or type of claim involved.

This statute generically creates the right to administrative offset. It is therefore inapplicable in light of 11 U.S.C. § 106 and the CCC regulations promulgated pursuant

to 5 U.S.C. § 301 which explicitly provides for administrative offsets. Section 3716(c)(2) fails to support the proposition that the CCC regulations are not binding on the bankruptcy court. Granted, both § 106 and 7 C.F.R. § 13.7 provide for setoff. However, one does not override the other since no conflict exists between them. If § 106 was absent from the bankruptcy code, no right of setoff generally would exist in bankruptcy proceedings. To the extent that the setoff *priority* of crop disaster payments is a question, the regulations (specifically 7 C.F.R. § 13.7) then control. No other statute, in the bankruptcy code or otherwise, deals with the priority to offset pre-petition money among competing governmental agencies. Therefore, no conflict exists and both should be applied, as long as they can be construed together without negating the effect of either.

Administrative regulations have the full force and effect of law as long as they are not inconsistent with any other existing law. *United States v. Lester*, 541 F.2d 499, 503 (5th Cir.1976). Appellee cites *Dobbs v. Train*, 409 F.Supp. 432 (N.D.Ga. 1975), *aff'd*, 559 F.2d 946 (5th Cir.1977), as authority that administrative agency regulations are entitled to deference but are not binding when they do not comport with congressional intent. The *Dobbs* decision involved a definitional statute which was found to control over the relevant regulation. In the case at bar, no statute exists in the bankruptcy code or elsewhere that establishes conflicting setoff priorities with the regulations promulgated by the Department of Agriculture. Thus the holding in *Dobbs* is inapplicable and the regulations have the force of law.

The internal procedures of the Department of Agriculture for dividing and applying setoff monies, which are incorporated into the debtor's contract in question, are not subject to the bankruptcy court's control and are further protected by the anti-injunction statute contained at 15 U.S.C. § 714b(c). The bankruptcy court is therefore bound by them.

True, the bankruptcy court has certain equitable powers in distributing assets and

authorizing the payment of debts. However, this discretion is bound by the limitations imposed by statutory and case law. A bankruptcy court, for example, cannot ignore the priority of liens perfected pursuant to the Uniform Commercial Code. It can only lift the stay and order liquidation so that the parties can be paid according to their lien priority. Likewise, the bankruptcy court is bound by the CCC regulations establishing priorities. Important to note in this case is that none of the government agencies raises a dispute as to the priorities given the agencies under 7 C.F.R. § 13.7. Thus the CCC priorities must be honored just as priorities of liens are honored with other secured creditors.

Appellee supports the *pro rata* sharing by arguing it furthers the "fresh start" intent of the bankruptcy code. This argument fails. Congress' intent in allowing IRS claims to survive a bankruptcy discharge already frustrates this "fresh start" of the debtor. The regulations establishing a priority payoff do not conflict with any congressional intent. In fact, the regulations place the IRS in the payment scheme before agencies not connected with the Department of Agriculture. If the regulations conflict with the congressional intent for the debtor to have a "fresh start" or for the IRS to always be first in line, the proper forum for aligning these competing interests is Congress and not the courts.

■ The appellee's argument of using the equitable subordination power granted the bankruptcy court under 11 U.S.C. § 510 is not applicable to the case at bar as inequitable conduct is necessary to sustain such a finding. Nonreferral of this matter by the IRS to the U.S. Attorney's office (who represents the other government agencies) is not the requisite inequitable conduct. Likewise, the argument that the agencies waived their right to setoff by filing a proof of claim fails. Such argument is not a proper issue for review as the matter was not raised before the court below and the record is incomplete on this matter. 11 U.S.C. § 553 provides that nothing affects the pre-petition setoff rights of a creditor. *In re G.S. Omni*

*Group*, 835 F.2d 1317, 1318 (10th Cir.1987). Further, secured creditors are not required to file proofs of claims under 11 U.S.C. § 506(d). The United States agencies are secured creditors in the money to be paid under the 1986 Act.

■ *Lastly*, the propriety of including the IRS in sharing of the setoff money is easily disposed. The setoff mandated under § 106 addresses debts owed to a governmental unit. "Government unit" is defined in 11 U.S.C. § 101(26) as the United States. Thus, under § 106, *all* United States agencies with a pre-petition claim against the debtor must set off their claims. Therefore the IRS should be considered in the motion to lift stay, even though it was not one of the movants. Its rights are definitely affected by the court's order lifting the stay.

### Conclusion

This court AFFIRMS the bankruptcy court in its conclusions of law that the government does not have a pre-petition interest in the 1987 Act's payments and that the same should be paid to the trustee pursuant to the bankruptcy court's denial of lifting the stay as to those payments. This court, however, REVERSES the bankruptcy court's determination that a *pro rata* sharing should occur among the government agencies with a claim in this bankruptcy. Instead, the money must be shared by *all* government agencies, including the IRS, in a manner consistent with 7 C.F.R. part 13 regulations, after liquidation of other collateral held by the SBA and FmHA. The debtor has not requested any part of the setoff money pursuant to the holding in *In re Buske* and therefore waived any right he had to a part of the 1986 payments.