**In re LAKESIDE COMMUNITY HOSPITAL, INC., Debtor.**

**STATE OF ILLINOIS, Appellant,**

**v.**

**LAKESIDE COMMUNITY HOSPITAL, INC., Appellee.**

**No. 92 C 4000.**

United States District Court, N.D. Illinois, E.D.

March 8, 1993.

Elenie K. Huszagh, Leon Zelechowski, Ltd., and Mark E. Leipold, Oppenheimer, Wolff & Donnelly, for Official Committee of Unsecured Creditors, appellee.

Robert A. Carrane, Robert A. Carrane and Associates, Chicago, IL, for debtor.

## *ORDER*

NORGLE, District Judge.

Before the court is the appeal of the State of Illinois ("Illinois") on behalf of Illinois's Department of Revenue, Department of Employment Security, and Department of Public Aid, from the United States Bankruptcy Court for the Northern District of Illinois. For the following reasons, the decision of the bankruptcy court is affirmed.

## FACTS

Lakeside Community Hospital ("Lakeside") provided medical services to patients, including indigent patients. Under contract with Lakeside, the Department of Public Aid was to reimburse Lakeside for services it rendered to indigent patients as authorized by state and federal Medicaid programs.

The Department of Public Aid had accumulated a bill of $1.6 million by April 4, 1991, the date on which Lakeside filed a Chapter 11 bankruptcy petition. In addition, at the time of filing the Chapter 11 petition, Lakeside owed the Department of Revenue $32,700.84 for withholding taxes and the Department of Employment Security $293,293.83 for unemployment contributions. Both departments filed Proofs of Claims.

On October 10, 1991, Illinois filed a motion in the bankruptcy court on behalf of the Department of Revenue, Department of Employment Security, and Department of Public Aid, to lift the automatic stay. Illinois sought the bankruptcy court's approval to allow a setoff of both tax claims against the funds owed to Lakeside from the Department of Public Aid. In response, the Committee of Unsecured Creditors filed a memorandum in opposition to this motion as well as a motion to enforce the Department of Public Aid's payments to Lakeside. In response, the Department of Public Aid raised sovereign immunity as a defense. Sometime thereafter, the bankruptcy court entered an order whereby the Department of Public Aid would remit its payments to Lakeside in its normal man-

ner. As a condition to this remittance, Lakeside agreed to hold an amount equal to the tax claims in escrow pending the court's disposition of Illinois's motion to lift the automatic stay.[1]

On April 1, 1992, the bankruptcy court heard oral arguments on Illinois's motion and orally rendered a decision. On April 28, 1992, the bankruptcy court entered a written opinion and order denying the motion to lift the automatic stay, finding that the Department of Revenue, Department of Employment Security, and Department of Public Aid lacked the requisite mutuality for setoff, 139 B.R. 886. Approximately ten days later, Illinois filed this appeal.

## DISCUSSION

On an appeal from an order of the bankruptcy court, the district court reviews factual findings for clear error and reviews conclusion of law *de novo*. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989). Illinois argues that the bankruptcy court erred when it held that Illinois's three departments are separate entities for purposes of determining mutuality and thus erred in denying a setoff under 11 U.S.C. § 553. The court concludes that the bankruptcy court did not err when it found the Department of Revenue, Department of Employment Security, and Department of Public Aid to be three separate entities.

■ The court's inquiry will take three steps. First, § 553 only recognizes a creditor's right to setoff if that right is created by state or federal statute or by common law. *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 938 (Bankr.N.D.Ill.1991). Therefore the court will examine state law to determine whether a right to setoff exists. Next, the court will examine the three supplemental requirements for allowing setoff which § 553 prescribes. *See id.* (outlining the Seventh Circuit's policies regarding setoff). Merely because statutory law creates a right of setoff, a bankruptcy court need not automatically enforce the right. *In re Elcona Homes Corp.*, 863 F.2d 483, 484–85 (7th Cir.1988); 4 *Collier*

*on Bankruptcy* § 553.06 at 553–39 (15th ed. 1988). Last, after satisfying the technical requirements of setoff, the bankruptcy judge must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives. *Elcona Homes*, 863 F.2d at 484. These goals include an orderly bankruptcy process and equitable treatment of all creditors. *Martin*, 130 B.R. at 939; *see also Boston & Maine, Corp. v. Chicago Pac. Corp.*, 785 F.2d 562, 566 (7th Cir.1986) (examining inequity of giving preference to one creditor over another creditor of the same class "because of the happenstance" of mutual obligations). Accordingly, even if setoff is authorized, it is a matter within the bankruptcy judge's discretion, *Martin*, 130 B.R. at 939, to be exercised within the principles of equity. *In re NTG Indus. Inc.*, 103 B.R. 195, 196 (Bankr.N.D.Ill. 1989).

■ The court agrees that for state accounting purposes, Illinois and its departments are a single entity. Thus, the Department of Revenue, Department of Employment Security, and Department of Public Aid fall under a state statute authorizing setoff. *See* 15 ILCS 405/10.05, formerly Ill.Rev.Stat. ch. 15, ¶ 210.05. In pertinent part, the statute provides:

> Whenever any person shall be entitled to a warrant or other payment from the Treasury or other funds held by the State Treasurer, on any account, against whom there shall be any account or claim in favor of the State, then due and payable, the Comptroller ... shall ascertain the amount due and payable to the State ... and draw a warrant on the treasury or on other funds held by the State Treasurer.... ·As used in this Section, an "account or claim in favor of the State" includes all amounts owing to "State agencies" as defined in Section 7 of this Act.

15 ILCS 405/10.05, Ill.Rev.Stat. ch. 15, ¶ 210.05. In defining state agencies, § 7 provides:

---

1. Illinois required this condition so that Lakeside could not argue later that Illinois had waived its right to setoff by turning over the funds.

*For purposes of this Act,* "State agencies" or "Agencies" means all departments, officers, authorities, public corporations and quasi-public corporations, commissions, boards, institutions, State colleges and universities and all other public agencies created by the State, other than units of local government and school districts....

15 ILCS 405/7, Ill.Rev.Stat. ch. 15, ¶ 207 (emphasis added). By virtue of this classification, the Departments of Revenue, Employment Security, and Public Aid are the "State" for purposes of § 10.03. Therefore, under statutory law, the Department of Revenue, Department of Employment Security, and Department of Public Aid are entitled to the right of setoff. This conclusion, however, does not end the analysis. The three departments' status as separate entities or a single entity must be evaluated for *bankruptcy purposes*, not merely state accounting purposes.

■ Section 553 protects a creditor's right of setoff if, and only if, the creditor satisfies its provisions. Section 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any rights of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553 (1988). As a result, there are three requirements for the bankruptcy court to recognize a statutorily created right of setoff: (1) the debtor must owe a debt to the creditor which arose prior to commencement of the action, (2) the debtor must have a claim against the creditor which arose prior to commencement of the action, and (3) the debt and claim must be mutual. *Braniff Airways, Inc. v. Exxon Co., USA,* 814 F.2d 1030, 1034 (5th Cir. 1987); *In re Brooks Farms,* 70 B.R. 368, 371 (Bankr.E.D.Wis.1987). The parties do not dispute the first two requirements, only the third: mutuality.

■ Although the Bankruptcy Code does not define mutual debts and claims, courts have consistently interpreted mutuality to mean that the "debts must be in the same right and between the same parties, standing in the same capacity and same kind or quality." *Boston,* 785 F.2d at 566; *Martin,* 130 B.R. at 939–40. The parties must have full and concurrent rights against each other. *Martin,* 130 B.R. at 940. Courts strictly construe mutuality, *NTG,* 103 B.R. at 197; 4 *Collier on Bankruptcy* § 553.04 at 553–17 (15th ed. 1988), to insure that a debtor's claim in one capacity is not setoff against a claim asserted by the party in a different capacity. *In re J.A. Clark Mechanical,* 80 B.R. 430, 432 (Bankr.N.D.Ohio); *Allegaert v. Perot,* 466 F.Supp. 516, 519 (S.D.N.Y.1978). Mutuality does not exist, for example, when the debts arise between parties acting in different capacities. 4 *Collier on Bankruptcy* § 553.04 at 553–25 (15th ed. 1988). Similarly, two entities, even though related, may not aggregate their debts and claims for setoff purposes. *Id.* at 553–23. Thus, the question is whether mutuality exists between the three departments and Lakeside. More particularly, under bankruptcy law, is Illinois or is each department individually the creditor?

■ The answer in this case is that each department is a creditor individually for purposes of setoff. Section 101 of 11 U.S.C. defines the relevant parties as delineated in § 553. A creditor is an "entity that has a claim against the debtor...." 11 U.S.C. § 101(10). An entity "includes person, estate, trust, [and] governmental unit...." *Id.* at § 101(15). Finally, governmental unit "means United States; State; ... [or] department, agency, or instrumentality of the United States ... [or of] a State...." *Id.* at § 101(27). The list enumerates separately both "State" and "department, [or] agency of the State". Congress intended that these units were to be treated as distinguishable and therefore not the same creditor within the provisions of the statute. In this case, there are three different departments. Based on this statutory interpretation, the Department of

Revenue and Department of Employment Security are two different creditors.

Illinois argues that "creditor" really means "government unit," which in turns means the State, relying on *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), *In re Cook United, Inc.,* 117 B.R. 301 (Bankr. N.D.Ohio 1990), and *In re Thomas,* 84 B.R. 438 (Bankr.N.D.Tex.1988), *aff'd in part, rev'd in part,* 91 B.R. 731 (N.D.Tex), *amended,* 93 B.R. 475 (N.D.Tex.1988). Illinois's conclusion is not supported by these cases. Illinois's reliance on *Cherry* is inappropriate as authority for their position for two reasons. First, *Cherry* was not a bankruptcy case and thus did not involve the same issues or rights. In *Cherry,* the federal government sought to setoff a tax refund due the petitioner under the Agriculture Adjustment Act against a loan the petitioner owed to the Reconstruction Finance Corporation under 28 U.S.C. § 250(1). *Cherry,* 327 U.S. at 537, 538, 66 S.Ct. at 729, 730. In *Cherry,* no other creditors were involved, merely a federally-created corporation. In this case, other unsecured creditors are involved. Second, the *Cherry* court itself limited its conclusions to the facts of that case or similar circumstances in nonbankruptcy cases. *Cherry,* 327 U.S. at 539–40, 66 S.Ct. at 730. Because of these differences, Illinois's reliance on *Cherry* is misplaced.

Similarly, reliance on *Cook* for the proposition that mutuality exists between different governmental agencies is incorrect. *Cook* involved the issue of whether a government agency waived sovereign immunity under 11 U.S.C. § 106(a)[2] when it filed a proof of claim in a bankruptcy case. *Cook,* 117 B.R. at 303. Neither § 106 nor the court's opinion involve the question of mutuality. Therefore, *Cook* does not support Illinois's mutuality argument.

Finally, *Thomas* involved the right of setoff between two federal agencies under 7 C.F.R. § 13.1 which specifically authorized setoff of Agriculture Stabilization and Conservation Service payments "against debts of such person owing to any department or agency of the United States." *Thomas,* 84 B.R. at 440. The regulation in *Thomas* explicitly permitted obligations owed by a *nonbankrupt* debtor to any governmental creditor (the Small Business Administration, Farmers Home Administration, Commodity Credit Corporation, and Internal Revenue Service in *Thomas*) to be setoff against Agriculture Stabilization and Conservation Service payments owed to that debtor. *Thomas,* 84 B.R. at 440. Conversely, neither the Illinois statute creating setoff in this case, nor § 553 and supporting definitions, explicitly state that funds owed to Lakeside by the Department of Public Aid may be setoff against any obligations Lakeside owes to another state department or agency. Therefore, *Thomas* does not support mutuality in this case.

In summary, Illinois's reliance on *Cherry, Cook,* and *Thomas* is misplaced. The court concludes the three departments are each separate creditors for purposes of § 553, and not the same parties for establishing mutuality for purposes of setoff under § 553.

The court has considered other elements of mutuality before deciding that the three departments are not mutual within § 553. The Department of Revenue, Department of Employment Security, and Department of Public Aid are related, but they are not identical for purposes of § 553. The different state agencies have separate identities

---

**2.** Section 106 provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose. (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsection (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains 'creditor', 'entity', or 'governmental unit' applies to governmental units; and

(2) a determination by the court of an issue arising under such provision binds governmental units.

11 U.S.C. § 106 (1988).

and interests, *see Jarboe v. United States Small Business Admin. (In re Hancock),* 137 B.R. 835, 846 (Bankr.N.D.Okla.1992) (idle to pretend that Federal agencies have no separate identities); *In re Julien Co.,* 116 B.R. 623 (Bankr.W.D.Tenn.1990) (two government agencies are not the same), which serve to distinguish them for purposes of bankruptcy. The departments possess different rights, claims, privileges, powers, and relationships with the debtor. Further, their administrative structures are distinct: budgets, staffs, services, functions, and supervising authority. Mutuality requires the parties to stand in the same capacity, right, and kind. *Boston,* 785 F.2d at 566; *Martin,* 130 B.R. at 939–40. The Departments of Revenue, Employment Security, and Public Aid do not satisfy these conditions. Each department exhibits distinct characteristics administratively, and more importantly, each has distinct functions with regard to Lakeside. Likewise, the departments do not hold the same rights as against Lakeside. The Department of Revenue and Department of Employment Security are similar in that they levy and collect taxes, and insure that Illinois's revenue code is followed. However, the Department of Public Aid is different from the Departments of Revenue and Employment Security in that it reimburses hospitals like Lakeside and insures that they are functioning within their contractual duties. The Department of Revenue and Department of Employment Security have no interest in the day to day operations of Lakeside, nor in its funding and compliance with Medicaid provisions so that it will receive reimbursement from the Department of Public Aid. The Departments of Revenue and Employment Security's primary interest in Lakeside is its compliance with tax provisions.

However, even if the requisite mutuality exists, the court must still affirm the bankruptcy court's decision on principles of equity. *In re Lincoln,* 144 B.R. 498, 501 (Bankr.D.Mont.1992); *In re Cloverleaf Farmer's Co-op,* 114 B.R. 1010, 1016 (Bankr.D.S.D.1990); *In re Mehrhoff,* 104 B.R. 125 (Bankr.S.D.Iowa 1989); *In re Butz,* 104 B.R. 128, 130 (Bankr.S.D.Iowa

1989). Because bankruptcy proceedings are equitable, *In re IML Freight, Inc.,* 65 B.R. 788, 791 (Bankr.D.Utah 1986), bankruptcy courts are not bound by the technical definitions of mutuality. *Hancock,* 137 B.R. at 840. Thus, bankruptcy courts may deny setoff whenever it appears appropriate in order to do equity, prevent injustice, and achieve the goals of procedural fairness. *Id.* This discretion is most appropriately exercised in Chapter 11 cases. *IML Freight,* 65 B.R. at 792.

Congress designed the Bankruptcy Code to provide for equal and consistent treatment among similarly situated creditors. *Id.* at 791. Thus, in evaluating whether to allow setoff, a bankruptcy judge must take into account other unsecured creditors' rights. *Hancock,* 137 B.R. at 841 ("This Court believes itself bound by [United States] Supreme Court precedent and by bankruptcy statute, legislative intent and policy to take into account the interests of all creditors, not just of the one claiming setoff"). The right of setoff "is exercised in aid of justice ... if the rights of no one but the [debtor] are affected by the act." *Hancock,* 137 B.R. at 841. *See also Blount v. Windley,* 95 U.S. (5 Otto) 173, 179, 24 L.Ed. 424 (1877). A setoff creates two major problems in Chapter 11 situations. First, setoff raises an unsecured claim to a secured claim. *Boston,* 785 F.2d at 566; *Cloverleaf,* 114 B.R. at 1017–18; *Hancock,* 137 B.R. at 841. It therefore works as an artificial preference for the creditor allowed to setoff over other unsecured creditors, denying those creditors of their statutorily defined position. *IML Freight,* 65 B.R. at 791–92. Second, setoff allows the creditor awarded setoff to receive 100% of its claim, rather than a pro rata share of the bankruptcy estate, as normally occurs. *See, e.g., Elcona Homes,* 863 F.2d at 485. In Chapter 11 cases, even though courts allow creditors' claims in full, the estate generally does not pay the full amount. *Hancock,* 137 B.R. at 841. In essence, the debtor does not "owe" each creditor 100% of that creditor's claim, but instead owes only a pro rata share of the assets available for distribution. *Id.* If

courts permit a creditor to setoff its claim, that creditor receives the entire amount of its claim. Conversely, other unsecured creditors receive only their pro rata share. Therefore, that a creditor happens to owe the debtor some amount of money works to its benefit and to the detriment of other creditors. *Elcona Homes*, 863 F.2d at 485. A merely coincidental relationship such as this works against the principles of equity. Equity may override a creditor's satisfaction of technical statutory requirements. *Lincoln*, 144 B.R. at 501, 502 (finding mutuality between Farmers Home Administration and Conservation Reserve Program but denying setoff because of the adverse affect it would have on a creditor Farm Credit Services and on debtor); *In re Mehrhoff*, 104 B.R. 125, 127 (S.D.Iowa 1989) (disallowing setoff because it would be inconsistent with the rehabilitative goals of the Bankruptcy Code under Chapter 7); *In Matter of Butz*, 104 B.R. 128, 129 (Bankr. S.D.Iowa) (same as *Mehrhoff* but under Chapter 12).

Allowing setoff in this case would not serve the goals of the Bankruptcy Code nor the principles of equity. Other parties' rights, particularly the rights of the Committee of Unsecured Creditors, are affected. First, the claims of the Department of Revenue and Department of Employment Security would be elevated to secured status, notwithstanding their statutory unsecured status. At the same time, though, other unsecured creditors would retain their unsecured status. Thus, the Departments of Revenue and Employment Security would be awarded an artificial preference. Second, because of this preference, the Department of Revenue and Department of Employment Security would be allowed 100% of their claims, in contrast to the pro rata share to which they would ordinarily be entitled. The money paid to the Department of Revenue and Department of Employment Security, which would normally have gone into the bankruptcy estate, would never make it into the estate. Therefore, less money would be available for distribution to other unsecured creditors and ultimately, their pro rata shares would be less. Allowing unequal treatment between similarly situation creditors and allowing the Department of Revenue and Department of Employment Security to setoff the funds due Lakeside from the Department of Public Aid would violate principles of equity and would not achieve the consistent treatment required by the Bankruptcy Code.

Finally, the court is aware that a number of cases presented in this appeal which address the issue have treated governmental departments as mutual. *See In re Sound Emporium, Inc.*, 48 B.R. 1 (Bankr. W.D.Tex.1984) (court considered Internal Revenue Service and Army mutual without discussion), *aff'd*, 70 B.R. 22 (W.D.Tex. 1987); *In re Schons*, 54 B.R. 665 (Bankr. W.D.Wash.1985) (court found Internal Revenue Service and Agriculture Stabilization and Conservation Service mutual by simply referring to the agencies collectively as "United States" without discussion); *In re Britton*, 83 B.R. 914 (Bankr.E.D.N.C.1988) (court found Farmers Home Administration and Commodity Credit Corporation mutual by relying on *Cherry*); *In re Thomas*, 84 B.R. 438 (Bankr.N.D.Tex.1988) (court found Farmers Home Administration, Small Business Administration, and Commodity Credit Corporation mutual by relying on *Cherry* and *Sound*), *aff'd in part, rev'd in part*, 91 B.R. 731 (N.D.Tex.), *amended*, 93 B.R. 475 (N.D.Tex.1988); *In re Hazelton*, 85 B.R. 400 (Bankr.E.D.Mich. 1988) (court found Farmers Home Administration and Agriculture Stabilization and Conservation Service mutual without discussion), *rev'd on other grounds*, 96 B.R. 111 (E.D.Mich.1988); *United States ex rel. Small Business Admin. v. Rinehart*, 88 B.R. 1014 (D.S.D.1988) (court found Small Business Administration, Agriculture Stabilization and Conservation Service, and Commodity Credit Corporation mutual by relying on *Cherry*), *aff'd in part, rev'd in part*, 887 F.2d 165 (8th Cir.1989); *In re Bennett Co.*, 118 B.R. 564 (Bankr. M.D.Tenn.1990) (court found Department of Mental Health and Mental Retardation and Department of Employment Security mutual by citing to *Rinehart, Thomas, Sound, Julien* as authority that different

agencies could be mutual); *In re Gore*, 124 B.R. 75 (Bankr.E.D.Ark.1990) (court found Agriculture Stabilization and Conservation Service and Small Business Administration mutual by relying on *Cloverleaf* and *Rinehart*); *In re Stall*, 125 B.R. 754 (Bankr. S.D.Ohio 1991) (court found Department of Education and IRS mutual by citing to *Thomas* and *Sound*). Yet, most of these cases place reliance on *Cherry*. As discussed above, reliance on *Cherry* is misplaced. Thus, while there is precedent for the argument that different governmental agencies are the same, there is little sound reasoning or support for such decisions. Contrarily, the several cases which have found that mutuality is lacking are coherent, reasoned opinions. *See Hancock*, 137 B.R. at 845 (lengthy discussion of origin and principles of setoff, relevance of third parties' rights and mutuality requirement as applied to different governmental agencies); *Mehrhoff*, 88 B.R. 922 (Bankr. S.D.Iowa) (discussing Code and statutory provisions regarding mutuality, priority of debts, prior case law finding mutuality and equitable principles); *Mehrhoff*, 104 B.R. 125 (S.D.Iowa 1989) (stating mutuality could exist between government agencies but not finding it does or must exist); *Butz*, 86 B.R. 595 (Bankr.S.D.Iowa) (analyzing differences between governmental agencies which preclude finding of mutuality).

In sum, Illinois's three departments are not mutual within the meaning of 11 U.S.C. § 553. Further, even if they were mutual, equitable principles preclude setoff on the facts of this case.

### CONCLUSION

For the reasons stated above, the decision of the bankruptcy court is affirmed.

IT IS SO ORDERED.