**In re BISON HEATING & EQUIPMENT, INC., Debtor.**

**Mark S. WALLACH, Trustee, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Defendant.**

Bankruptcy No. 91–12212 B.
Adv. No. 93–1111 B.

United States Bankruptcy Court,
W.D. New York.

Feb. 7, 1995.

Penney, Maier, Mandel, Wallach & Crowe (William R. Crowe, of counsel), Buffalo, NY, for plaintiff.

David F. Butterini, Buffalo, NY, and New York State Dept. of Law (Steven Koton, Maryellen Weinberg and Jane Lauer Barker, Asst. Attys. Gen., of counsel), Brooklyn, NY, for New York State Dept. of Taxation and Finance.

CARL L. BUCKI, Bankruptcy Judge.

At issue in this Chapter 7 proceeding is whether sovereign immunity can shield the State of New York and its departments from liability under 11 U.S.C. § 549 to disgorge unauthorized post-petition transfers. Implicated in this analysis are the provisions of 11 U.S.C. § 106, which previously provided a limited waiver of sovereign immunity. As enacted on October 22, 1994, the recent amendments to the Bankruptcy Code purport to enlarge the scope of this immunity waiver. Unlike all but one other of the substantive provisions of the amending statute, the changes to section 106 are applied retroactively to all pending cases.[1] Thus, this Court must also consider the application of the Bankruptcy Reform Act of 1994 to the present facts.

Bison Heating & Equipment, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 21, 1991. Until its conversion to Chapter 7 on August 4, 1992, the corporation continued to operate as a debtor-in-possession. During this period, on various dates in September of 1991, the debtor paid the sum of $7,000 to the New York State Department of Taxation and Finance, mostly on account of prepetition sales taxes.[2] Within two years of the payment dates, the Chapter 7 trustee commenced the present adversary proceeding pursuant to 11 U.S.C. § 549 to recover the amount of these advances with interest. Alternatively, the trustee sought permission to set off this sum against any dividend that might otherwise be payable to the Department of Taxation and Finance or to any other division or department of the State of New York.

No one disputes that the trustee possesses a valid claim under section 549 of the Bankruptcy Code. In relevant part, subdivision (a) of this section states that the trustee "may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2) ... (B) that is not authorized under this title or by the court." As required by subdivision (d) of this section, the trustee commenced his action within two years after the transfer and prior to the closing of the case. The chief defense of the State of New York and its subdivisions is that sovereign immunity precludes any such recovery.[3]

The New York State Department of Taxation and Finance has declined to file any proof of claim in this case. Rather, the only instrumentality of the State of New York to assert a claim is the New York State Department of Labor, which has filed two claims for unemployment insurance premiums. The first, in the amount of $4,119.95, seeks tax priority under 11 U.S.C. § 507(a)(7), with respect to prepetition obligations. The second, in the amount of $4,142.93, claims priority under 11 U.S.C. § 507(a)(1) for sums due during the period of administration in Chapter 11.

The present dispute comes before this Court in two contexts. Initially, the trustee moved for summary judgment in the adversary proceeding that he had commenced under section 549. In particular, he proposed to offset his claim against the anticipated distribution to the Department of Labor.

---

1. P.L. No. 103–394, 108 Stat. 4106, § 702(b)(2)(B).

2. In New York State, unremitted sales taxes constitute not only a liability of the debtor, but also a personal liability of any officer or director having a duty to act in complying with the requirements of the Tax Law. N.Y.Tax Law § 1131 and § 1133 (McKinney 1987). As a tax which the officers and directors are required to collect [see 11 U.S.C. § 507(a)(7)(C)], this obligation would also be nondischargeable in a bankruptcy of any such corporate principal. 11 U.S.C. § 523(a)(1).

Of the $7,000 paid to the Department of Taxation and Finance, two payments totalling $5,500 were fully on account of pre-petition sales taxes.

The third payment of $1,500 was applied to sales taxes due for a period that included both prepetition and post-petition activity. Presumably, some portion of this one advance may have been an appropriate administrative disbursement.

3. Early in proceedings on the trustee's motion, the Department of Taxation and Finance asserted that payment from a designated trust account would not implicate property of the estate. However, there is no indication that the debtor paid funds from a pre-petition trust account. Unlike the facts in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the debtor's payment occurred postpetition, presumably from general assets not subject to any trust characterization.

Concerned that the Department of Labor was not a party to that adversary proceeding or to the motion for summary judgment,[4] this Court directed the trustee to file formal objections to the Department of Labor's Proof of Claim. By separate counsel, the Department of Taxation and Finance and the Department of Labor appeared at a joint hearing scheduled both for the claim objection and on the Motion for Summary Judgment.

### Affirmative Recovery

The 1994 amendments to section 106 of the Bankruptcy Code have significantly enlarged the statutory waiver of sovereign immunity. If it were applicable,[5] the amended statute would permit the trustee's recovery of all post-petition payments to the New York State Department of Taxation and Finance. In its revised form, section 106 provides that this Court "may hear and determine any issue arising with respect to the application of [section 549] to governmental units." 11 U.S.C. § 106(a)(2). The clarity of this amended text also highlights the restrictive nature of the previous statute. Prior to October 22, 1994, as noted by the Supreme Court in *United States v. Nordic Village,* 503 U.S. 30, 34–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181, 188 (1992), section 106 waived sovereign immunity only "in two settings: compulsory counterclaims to governmental claims, 11 U.S.C. § 106(a); [and] permissive counterclaims to governmental claims capped by a setoff limitation, 11 U.S.C. § 106(b)."

■ The facts of the present case are essentially identical to those which the Supreme Court considered in *United States v. Nordic Village, id.* For the reasons stated in that decision, the prior version of section 106 of the Bankruptcy Code does not permit an affirmative recovery of monies transferred in violation of 11 U.S.C. § 549 from a govern-

mental unit which does not assert a claim arising from the same transaction or occurrence. Even if one were to view the Department of Labor and the Department of Taxation and Finance as a single entity, the state's claim for unemployment insurance premiums represents an obligation distinct from the sales taxes that the debtor paid in violation of section 549. In the absence of a filed claim relating to sales tax, neither the State of New York nor its Department of Taxation and Finance has waived sovereign immunity as contemplated by the previous version of section 106(a). *See Posey v. United States Dept. of the Treasury—I.R.S.,* 156 B.R. 910 (W.D.N.Y.1993). Thus, affirmative relief against the department is permitted only if this Court were to apply the more liberal provisions for waiver of sovereign immunity as contained in the Bankruptcy Reform Act of 1994.

■ Although the Bankruptcy Reform Act provides that the amendments to section 106 apply to cases commenced "before, on, and after the date of the enactment of this Act", such retroactivity cannot expand or restrict rights that were definitively set and fully determinable prior to the statutory enactment. Subdivision (d) of section 549 of the Bankruptcy Code requires that a trustee commence an action under this section no later than "the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." In the present instance, therefore, the trustee's cause of action expired in September 1993, a time subsequent to commencement of the trustee's action but long prior to any extension of waiver of sovereign immunity. Until waived, the doctrine of sovereign immunity affords to the state protection from suit and not merely protection from an adverse judgment.[6] Sovereign immunity,

---

4. The materiality of this concern arguably hinges upon the outcome of the present dispute. To the extent that the Department of Labor and the Department of Taxation and Finance are mere subunits of the same entity, an appearance by one such subunit might bind the other department. By requiring the trustee to object to the Department of Labor's claim, this Court has avoided this issue, as well as any broader presupposition regarding relationships among departments of the State of New York.

5. In view of the holdings herein, this Court need not consider the impact of the Eleventh Amendment on the constitutionality of the Bankruptcy Reform Act of 1994.

6. *See Duhne v. State of New Jersey,* 251 U.S. 311, 314, 40 S.Ct. 154, 154–55, 64 L.Ed. 280 (1919) wherein Justice White observed that "the Federal jurisdiction does not embrace the power to entertain a suit brought against a state without its consent."

as it existed in September 1993, should have precluded suit for an affirmative recovery against the Department of Taxation and Finance. At all times prior to the expiration of the limitations period, the state was immune from suit for affirmative recovery. Had the Department so moved, this Court would have been compelled to dismiss that portion of the trustee's complaint. The subsequent extension of waiver cannot accord a *nunc pro tunc* authorization for a suit that the trustee could not have commenced within the applicable limitations period.

### Offset Claim

■ Both before and after the enactment of the Bankruptcy Reform Act of 1994, section 106 provided a similarly broad waiver of sovereign immunity for purposes of offset.[7] In either instance, section 106 states that the claim "of a governmental unit" may be offset against "any claim against such governmental unit that is property of the estate." The trustee contends that the Department of Labor and the Department of Taxation and Finance are part of a single governmental unit, namely, the State of New York. Having a valid claim against the Department of Taxation and Finance pursuant to 11 U.S.C. § 549, the trustee proposes to offset that liability against the undisputed claim that the Department of Labor has asserted against the estate.

The focus of the trustee's argument is the definition of governmental unit. In opposition, both the Department of Labor and the Department of Taxation and Finance assert their separate and distinct identities. They urge reliance upon *In re Lakeside Community Hospital, Inc.*, 151 B.R. 887 (N.D.Ill.1993), in which the Bankruptcy Court refused to permit offset under 11 U.S.C. § 553, as among the interests of three departments of the State of Illinois. In deciding that those agencies were distinct governmental units, the Court noted their "separate identities and interests"; their possession of "different rights, claims, privileges, powers, and relationships with the debtor"; and their distinct administrative structures. 151 B.R. at 892–93. Similarly, in the present instance, the respondents point to many distinguishing characteristics: that the Department of Labor administers its unemployment insurance fund in trust, apart from other sources of state revenue; that the State of New York does not provide additional revenue to that trust fund; that the federal government, not the state, pays all administrative costs of the unemployment insurance program; and that the two departments have different administrative structures and functions.

■ As used in section 106 of the Bankruptcy Code, "governmental unit" may certainly refer to subdivisions that are less comprehensive than one of the fifty states. Not every office, however, is necessarily so distinctive as to constitute a separate unit for purposes of this statute. Characterization as a governmental unit depends, therefore, upon the scope of a subdivision's power and authority. As creatures of the State of New York, the Department of Labor and the Department of Taxation and Finance possess structures whose identity is defined by the state. The state, therefore, will determine their essences and will thereby define whether any such essence constitutes a separate governmental unit for purposes of the Bankruptcy Code. The sovereign may announce this separateness, or lack thereof, by implication or through outright declaration. Recognizing the ultimate authority of the state to empower its own subdivisions, this Court must honor a state's clear statement disaffirming a subdivision's separate identity.[8]

Under New York law, the Department of Labor and the Department of Taxation and Finance function not as sacrosanct governmental units, but as divisions of a larger entity organized into sub-units for operational purposes. Article 5, section 2 of the New

---

7. The primary change of the amendment was to *permit offset against a "claim or interest"*, rather than only with respect to an "allowed claim or interest." This change is of no relevance in the present instance in that the trustee appears not to question the allowability of the claim of the Department of Labor.

8. The opposite, however, does not necessarily follow. If contradicted by reality, a declaration of separateness may be a self-serving statement designed solely to avoid the offset implications of section 106.

York Constitution provides that "[t]here shall be not more than twenty civil departments *in the state government*" (emphasis added). As two of these departments, Labor and Taxation and Finance exist in the state government rather than separate or apart therefrom. Consistent with the function of departments as part of a larger unit, the state constitution generally disavows the grant of independent authority to these subdivisions. Article 5, section 3 of the New York Constitution provides, subject to any limitations contained in the constitution, that "the legislature may from time to time assign by law new powers and functions to departments, ... and increase, modify or diminish their powers and functions." This section further states that nothing in article 5 "shall prevent the legislature ... from reducing the number of departments as provided for in this article, by consolidation or otherwise."

 The right of offset serves as an unmistakable indication that nominally distinct departments exist as components of a single entity. Fundamentally, the concept of offset applies only to mutual credits and debts. It arises when a party credits monies due from a particular entity against obligations owed to that same entity. When a state permits two or more of its subdivisions to effect offset with respect to the obligations and rights of a particular party, the state implicitly acknowledges that those subdivisions enjoy an identity that is the same rather than distinct. Such is the situation among the governmental departments of New York State. Section 171–f(2) of the New York Tax Law authorizes the Commissioner of Taxation and Finance to credit various tax overpayments "against the amount of a past-due legally enforceable debt owed by such taxpayer to a state agency." For purposes of this statute, state agency includes any state department, such as the Department of Labor. N.Y.Tax Law § 171–f(1)(a) (McKinney Supp.1995). The legislative history for section 171–f is even more explicit in recognizing the Departments of Labor and Taxation and Finance as part of a single governmental

unit, the State of New York. In a memorandum issued upon the enactment of this statute, the State Executive Department observed that the amendment's purpose was to authorize the Department of Taxation and Finance "to intercept tax refunds and any other State payments ... and apply such refunds or payments to the debt owed *to the State*." Memorandum of State Executive Department, L.1992, c. 55, 215th Sess., *reprinted in* 1992 N.Y.Laws 2524, 2528 (McKinney) (emphasis added).

Even before the enactment of Section 171–f of the New York Tax Law, the state had long recognized a common law right of offset to be shared by its departments. Particularly in point is the decision in *Siegel v. State of New York,* 262 A.D. 388, 28 N.Y.S.2d 958 (3rd Dept.1941, which specifically held that the Department of Labor does not enjoy status as a separate entity for purposes of offset in bankruptcy. In *Siegel,* the Appellate Division allowed the Department of Labor to recover an unemployment insurance premium from monies that would otherwise be paid to a bankruptcy trustee as a refund of a liquor license fee. At issue was section 68 of the Bankruptcy Act of 1938, which permitted the offset "of mutual debts or mutual credits between the estate of a bankrupt and a creditor." [9] Implicit in the decision was the conclusion that under New York law, the state and its Department of Labor were a single creditor whose respective debts and credits were mutual in nature. No party has referred this Court to any material amendments to the statutory framework which governed the Department of Labor at the time of the *Siegel* decision. Nor has any state tribunal overruled the dictate of that case.

The *Siegel* decision confirms that the State of New York deems itself and the Department of Labor to constitute a single entity capable of holding mutual credits and debts. This identity must also extend to the Department of Taxation and Finance. As the State's revenue collection branch, the Department of Taxation and Finance is intrinsically linked to the state, and can certainly

---

**9.** Although the Bankruptcy Code of 1978 incorporates many changes from the Bankruptcy Act of 1938, both statutes adopt the same rule, that offset applies only to mutual debts and credits as between the debtor and the same party.

proffer no greater justification for treatment as a separate entity.

The ability of New York State to apply offset for its own benefit inexorably requires a similar application when offset works to its detriment. In either instance, the right of offset will follow when and only when an entity stands as both obligor and obligee. Having declared this policy as among its various departments in order to enforce its rights, the State must now suffer the same outcome for purposes of satisfying its obligations. Such equality of result is required under equitable principles, as summarized by the maxim *"aequitas est aequalitas."*[10] Herein also lies the basis for distinguishing the decision in *In re Lakeside Community Hospital, Inc.,* 151 B.R. 887 (N.D.Ill.1993), upon which the Department of Taxation and Finance places great reliance. In contrast to the present circumstance, the court in that case noted that nothing in Illinois law provided "that funds owed to [the debtor] by the Department of Public Aid may be offset against obligations [the debtor] owes to another state department or agency." *Id.* at 892.

The trustee may, therefore, treat the Department of Labor and the Department of Taxation and Finance as a single entity for purposes of offset under 11 U.S.C. § 106. While a trustee may properly employ offset to collect a valid claim, offset is not a punitive concept. Its application must not impose a greater impediment than if the state actually satisfied the estate's claim under section 549. Had the State of New York disgorged the unauthorized payment of pre-petition taxes, it would be entitled to assert a priority claim for a like amount. In precluding an affirmative recovery, sovereign immunity adversely impacts the bankruptcy estate only for the difference between the amount of monies that were improperly received and such sums as would have been returned to the Department of Taxation and Finance on account of its claim. Accordingly, it is only this difference which the trustee may offset

against what would otherwise be his distribution to the Department of Labor.[11]

The trustee's motion for summary judgment is granted, and his objection to the claim of the Department of Labor is sustained, to the extent that the distribution on account of the Department of Labor's claim shall be offset by an amount equal to the difference between the total of the unauthorized payments and the sum that the trustee would have paid to the Department of Taxation and Finance on account of a priority tax claim for a like amount. To the extent that the parties are unable to stipulate to the total of the unauthorized payments, they shall schedule a further hearing on that issue. Judgment consistent with this order will be entered upon final determination of the sum paid on account of pre-petition taxes.

So ordered.

---

10. "Equity is equality."

11. This result further comports with the direction of 11 U.S.C. § 502(d), that a claim be disallowed unless the trustee recovers the

amount of any transfer that is avoidable under section 549. Once the trustee recovers that transfer, the predicate for section 502(d) is fulfilled.