# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-3254

IN RE: DOCTORS HOSPITAL OF HYDE PARK, INC.,

*Debtor.*

APPEAL OF: DAIWA SPECIAL ASSET CORPORATION.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 1822—**Marvin E. Aspen,** *Judge.*

ARGUED FEBRUARY 28, 2003—DECIDED JULY 28, 2003

Before BAUER, POSNER, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal requires us to consider the relation between two statutes of Illinois. One, the Uniform Commercial Code, adopted in Illinois as in all states, provides that the rights of an assignee of an account debtor "are subject to (a) all the terms of the contract between the account debtor and the assignor . . . and (b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." UCC § 9-318(1), 810 ILCS 5/9-318(1). (Effective 2001—too late to affect this case—section 318 was amended and renumbered, becoming UCC § 9-404, 810 ILCS 5/9-404. The language we have quoted was not materially changed, however.) An "account debtor" is basically someone who owes money as a result of a contractual undertaking. UCC 9-105(1)(a), 810 ILCS

5/9-105(1)(a); see *Newcombe v. Sundara*, 654 N.E.2d 530, 534 (Ill. App. 1995); *Factofrance Heller v. I.P.M. Precision Machinery Co.*, 627 F. Supp. 1412, 1415 n. 3 (N.D. Ill. 1986). Assignments of accounts are subject to Article 9 of the UCC. 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 30-2, p. 4 (4th ed. 1995).

The other statute, the Illinois Comptroller Act, provides, so far as bears on this case, that whenever the state owes money to someone who owes the state money "the Comptroller may deduct the entire amount due and payable to the State." 15 ILCS 405/10.05. In other words, the state has a right of setoff. Furthermore, "no sale, transfer or assignment of any claim or demand against the state, or right to a warrant on the treasurer, shall prevent or affect the right of the comptroller to make the deduction and off-set provided in the foregoing section." 15 ILCS 405/10.06. The potential tension between the Comptroller Act and the UCC lies in the fact that the former purports to create an unqualified right in the state to a setoff against an assignee while the latter makes assignees subject only to the terms of the original contract plus those defenses of the account debtor against the assignor that while they do not arise from the contract do at least accrue before the account debtor (the assignor's debtor, the state in this case) learns of the assignment. The state's defense in this case, namely a tax claim that it seeks to set off against a claim of payment for services to Medicaid recipients, arose after the state received notice of the assignment. But if the right of setoff constituted a term of the assigned contract, the state can enforce the Comptroller Act without violating the UCC. Setoffs—statutory, common law, and explicitly contractual, and whether in favor of government entities or private ones—are commonplace. But Illinois's statute is unusual in providing that a class of setoffs is not to be affected by assignment.

The facts, at any rate, are simple. (The law is complex and uncertain, as we shall see.) Doctors Hospital assigned its accounts receivables to Daiwa, and the receivables included money owed the hospital by the state under a contract whereby the state had agreed to reimburse the hospital for expenses incurred by the hospital in providing services to Medicaid patients. The contract did not contain a clause authorizing the state to offset, against any amount it owed the hospital, tax or other obligations that the hospital might owe it; had the contract contained such a clause, Daiwa would have no ground for an appeal. See *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780-84 (10th Cir. 2001) (Kansas law).

Doctors Hospital went broke, and the state moved to lift the automatic stay against creditors' enforcement actions to the extent necessary to enable the state to set off against the money it owed Daiwa, as the hospital's assignee, taxes that the hospital owed the state plus a small amount of Medicaid overpayments that the state had made to the hospital. Daiwa acknowledged that the latter setoff (actually "recoupment," as we'll see in a moment) was proper, but not the former. The bankruptcy court agreed with Daiwa and denied the state's motion to lift the automatic stay, but the district court disagreed and allowed the setoff of the state taxes as well, 272 B.R. 677 (Bankr. N.D. Ill.), rev'd, 291 B.R. 453 (N.D. Ill. 2002), and Daiwa appeals. The district court's order granting the state's motion to lift the automatic stay was final and therefore appealable to us. *Colon v. Option One Mortgage Co.*, 319 F.3d 912, 916 n. 1 (7th Cir. 2003); see also *In re James Wilson Associates*, 965 F.2d 160, 166-67 (7th Cir. 1992).

The state persuaded the district court that the Comptroller Act created an implied term in the contract between the state (an account debtor by virtue of its Medicaid contract with the hospital) and the hospital (the assignor of the

accounts receivable arising from the contract) that bound the assignee (Daiwa). If this is right, then there is no inconsistency between the two statutes and we would not have to consider which prevails if they do clash—the UCC because it was adopted in Illinois before the latest version of the Comptroller Act and repeals by implication are said to be disfavored, e.g., *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936), and because it deals specifically with assignments? Or the Comptroller Act because the original Act, an antique dating back to 1851; *La Pine Scientific Co. v. Lenckos*, 420 N.E.2d 655, 657 (Ill. App. 1981), preexisted the UCC and deals specifically with setoffs arising from state contracts? Whichever statute were held to prevail would necessarily be repealing the other by implication, since the current Comptroller Act is newer than the UCC (making the UCC repealed by implication if the Comptroller Act prevails) but the UCC is newer than the original Comptroller Act (making the Comptroller Act repealed by implication if the UCC prevails).

Daiwa has, as we have indicated, no quarrel with the state's deducting from what Daiwa is owed the overpayments that the state made to the hospital. The state never owed the hospital the full amount of the accounts receivables because it had overpaid, and so the full amount was not the hospital's to assign to Daiwa. Recoupment of that amount merely conformed the assignee's debt to the express terms of the contract between the account debtor and the assignor. *In re TLC Hospitals, Inc.*, 224 F.3d 1008 (9th Cir. 2000); *United States v. Consumer Health Services of America, Inc.*, 108 F.3d 390 (D.C. Cir. 1997). But the taxes are an unrelated debt of the hospital to the state, and while the Medicaid contract could have contained a provision expressly entitling the state to set off any taxes the hospital owed it against any Medicaid payments that it owed the hospital, it did not.

The state does not rely on a common law right of setoff; we're not sure why. Although we said in another case that common law setoffs "are permitted only when the debts are 'mutual', and debts arising at different times out of different circumstances are not mutual," *Soo Line R.R. v. Escanaba & Lake Superior R.R.*, 840 F.2d 546, 551 (7th Cir. 1988), the general rule is that mutuality is satisfied when the offsetting obligations are held by the same parties in the same capacity (that is, as obligor and obligee) and are valid and enforceable, and (if the issue arises in bankruptcy) both offsetting obligations arise either prepetition or postpetition, even if they arose at different times out of different transactions. *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990); see, e.g., *In re Bevill, Bresler & Schulman Asset Management*, 896 F.2d 54, 59 (3d Cir. 1990); *In re Bay State York Co.*, 140 B.R. 608, 613-15 (Bankr. D. Mass. 1992); *In re Thurston*, 139 B.R. 14, 15 (Bankr. W.D. Mo. 1992).

There is however, disagreement over whether different agencies of the same state government are one party or more than one party for mutuality purposes; if the latter, the "held by the same parties" requirement of mutuality is not satisfied. Compare *In re Lakeside Community Hospital*, 139 B.R. 886, 889-90 (Bankr. N.D. Ill. 1992) (state agencies not one entity for setoff purposes), aff'd, 151 B.R. 887, 891-93 (N.D. Ill. 1993), with *In re Bison Heating & Equipment, Inc.*, 177 B.R. 785, 789-91 (Bankr. W.D.N.Y. 1995) (state agencies, as "creatures of the State" are a "single entity capable of holding mutual credits and debts"), and *In re Bennett Co.*, 118 B.R. 564, 565-66 (M.D. Tenn. 1990) (same). In *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998), we held that different federal agencies are to be treated as one for setoff purposes, but there does not appear to be a definitive ruling concerning the status of Illinois state agencies.

Because the state is not invoking a common law right of setoff and there is no express setoff provision in the

Medicaid contract, the state needs the Comptroller Act to have any right to deduct the taxes that the hospital owes it from the money that it owes Daiwa by virtue of the hospital's assignment of its accounts receivables to the latter.

The district court ruled, as we said, that the Act created an implied term in the contract between Doctors Hospital and the state, binding Daiwa as the assignee of Doctors Hospital's rights under the contract. "[S]tatutes are a source of implied contractual terms—the Uniform Commercial Code being the most common such source—just like common law doctrines, such as the duty of good faith, which in Illinois is read into all contracts." *Selcke v. New England Ins. Co.*, 995 F.2d 688, 689 (7th Cir. 1993) (citations omitted); see *Schiro v. W.E. Gould & Co.*, 165 N.E.2d 286, 290 (Ill. 1960). It seems plain enough that if an Illinois statute expressly provided that every Medicaid contract entitled the state to a setoff of any money owed it by the Medicaid contractor, a right of setoff would become a term in all such contracts by operation of law. *In re Estate of Dierkes*, 730 N.E.2d 1101, 1107 (Ill. 2000); *Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 850 (Ill. App. 1998); *Lincoln Towers Ins. Agency, Inc. v. Boozell*, 684 N.E.2d 900, 903-04 (Ill. App. 1997). Daiwa would still argue that implied terms, though effective between the parties to the contract, should not be deemed within the reach of section 318(1)(a) of the UCC, because section 318(4) (which persists in the successor provision, UCC § 9-406(d)) provides that "a term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment;" in addition, as we noted in *Bank of America, N.A. v. Moglia*, 330 F.3d 942, 947-48 (7th Cir. 2003), the common law of Illinois is hostile to antiassignment clauses, though less so than the common law of many states. See *id.*; *Piasecki v. Liberty Life Assurance Co.*, 728 N.E.2d 71, 73-74 (Ill. App. 2000); *Henderson v. Roadway Express*, 720 N.E.2d 1108, 1111-13 (Ill. App. 1999). But the argument

would fail. A prohibition against assignment is just that, a *prohibition*, which is not the same thing as subjecting an assignee—meaning of course that assignment has *not* been prevented—to his assignor's contractual duties. Section 318(1)(a) does that explicitly, and we cannot find any cases, whether interpreting section 318(4) of the Uniform Commercial Code or applying the common law policy against antiassignment clauses, that suggest that such clauses allow an assignment to wipe out all defenses against assignors. Few people would agree to contracts that allowed the other party, by assigning the contract, to escape all its contractual obligations.

Still, bearing in mind the objective of the policy against antiassignment clauses, namely the objective of facilitating assignment by protecting assignees against unsuspected obligations of their assignors, one might want to distinguish between a duty (giving rise to a defense) stated in the contract itself, and therefore obvious to the assignee at the time of the assignment, and a duty that could be discovered only by searching the statute books. An analogy might be drawn to the distinction in property law between covenants that do and covenants that do not run with the land. The former are effective against subsequent purchasers but the latter are not unless expressed in the subsequent sale contract. *Spencer's Case*, 77 Eng. Rep. 72, 74 (K.B. 1583); see also *U.S. Fidelity & Guarantee Co. v. Old Orchard Plaza Limited Partnership*, 672 N.E.2d 876, 884-85 (Ill. App. 1996); *Purvis v. Shuman*, 112 N.E. 679, 682 (Ill. 1916). The reason for the difference is that covenants are allowed to run with the land only if they regulate the use of the land (for example, a covenant against building a fence) and so are discoverable by a search of the title records or by visual inspection; if they arise from unrelated contracts, they are not readily discoverable and so they do not bind subsequent purchasers unless repeated in the contracts with

those purchasers. Susan F. French, "Toward a Modern Law of Servitudes: Reweaving the Ancient Strands," 55 *S. Cal. L. Rev.* 1261 (1982). Daiwa could glean the express terms of its assignor's Medicaid contracts just by reading the contracts. But it couldn't discover the Comptroller Act by reading the contracts and anyway the Act itself is not as specific (not quite, at any rate) as the variant of it that we hypothesized in the previous paragraph.

These arguments prove too much; they imply that no implied contractual terms are enforceable against assignees, which is false. *Hasse Contracting Co. v. KBK Financial, Inc.*, 980 P.2d 641, 645 (N.M. 1999). An assignor can assign only what he has, and so, as the cases say, the assignee stands in the shoes of the assignor. *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 839 (Ill. 1988); *Block v. Pepper Construction Co.*, 710 N.E.2d 85, 90 (Ill. App. 1999); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1189 (7th Cir. 1990); *National City Bank v. Columbia Mutual Life Ins. Co.*, 282 F.3d 407, 409 (6th Cir. 2002). Otherwise assignment would be a method of shucking off contractual obligations without the consent of the obligee. Section 318(1)(a) of the Uniform Commercial Code, and its successor provision, are explicit in subjecting the assignee to the contractual duties assumed by the assignor. And the binding terms of a contract include implied as well as express terms. For example, in Illinois a duty of good faith is, as we noted earlier, read into every contract. Can an assignee nevertheless collect a debt based on his assignor's bad faith? Surely not. And if common law doctrines create implied terms that bind assignees, so, obviously, should statutory doctrines.

We are mindful that *Bank of Kansas v. Hutchinson Health Services, Inc.*, 785 P.2d 1349, 1355-56 (Kan. 1990), the principal case on which Daiwa relies, analyzed the Kansas statutory right to setoff, Kan. Stat. Ann. § 75-6204, which is much the same as section 10.05 of the Illinois Comptroller

Act, under section 318(1)(b) of the UCC. But it is not a compelling precedent. The court did not discuss the possibility that the applicable subsection was actually (a) even though Kansas law accepts the proposition that "applicable or relevant and valid statutes, ordinances, regulations, and settled law at the time the contract was made become a part of the contract and must be read into it, unless a contrary intention is shown." *Heartland Premier, Ltd. v. Group B & B, L.L.C.*, 31 P.3d 978, 981 (Kan. App. 2001). Other cases as well treat statutory and common law setoff rights under subsection (b), see *Bank of Waunakee v. Rochester Cheese Sales, Inc., supra*, 906 F.2d at 1191; *In re Davidson Lumber Sales, Inc.*, 66 F.3d 1560, 1564-65 (10th Cir. 1995); *Chase Manhattan Bank (N.A.) v. State*, 357 N.E.2d 366, 368-69 (N.Y. 1976), but again without considering the applicability of (a). *Hasse Contracting Co. v. KBK Financial, Inc., supra*, is to the contrary, treating a New Mexico statute that required prompt payment of contractual obligations in public works projects as incorporated into the contracts, thus giving rise to a defense governed by section 318(1)(a).

Bringing implied terms within the reach of section 318(1)(a) does not make subsection (b) superfluous. A contract party might have a defense that did not arise out of the contract itself and therefore was not subject to subsection (a). Suppose that *A* and *B* have two contracts, the first is silent on setoff, there is no applicable statute entitling either party to an offset, and the contracts are not related closely enough for common law setoff to be available. The second contract, however, contains a provision entitling *A* to set off any debt to *B* arising from that contract against any debt of *B* to *A* arising from the first contract. If *B* had assigned the first contract to *C* before making the second one, *A*, which let's assume is owed money by *B* on the second contract, could not defend against *C* on the basis of the setoff clause in the second contract, because *C* when it

took the assignment had no notice of *A*'s setoff right. A more common example (for we cannot find any cases corresponding to our hypothetical) would be where the second contract modified the first; but that example is the subject of a separate provision of section 318, section 318(2). Perhaps, then, we should have said that bringing implied terms within the reach of section 318(1)(a) does not make subsection (1)(b) *completely* superfluous.

The state wants to be able to set off taxes and other money owed it against any state debts, and this policy would be compromised if the right of setoff could be defeated by assignment—hence section 10.06 of the Comptroller Act. Without a right of setoff it is unlikely that the state will be able to collect any of the taxes owed it by Doctors Hospital. According to its Chapter 11 petition, Doctor's Hospital when it declared bankruptcy had total assets of some $24 million and total liabilities of $81 million of which $60 million was secured debt, an amount greatly in excess of the hospital's assets. So if there is no right of setoff, the state will get nothing. Assignments of accounts receivables are common and would on Daiwa's approach render state taxes uncollectible in many cases in which an assignor owed money by the state assigns his right to collect the money and then becomes insolvent owing secured debt. The principal effect of ruling for Daiwa might be to induce the state to include explicit setoff rights in its contracts, in which event such a ruling would merely have increased the costs of transacting.

The problem of notice that we mentioned earlier is not a compelling objection to deeming the Comptroller Act to have created an implied term in the contract between the state and the hospital. Daiwa when it took the assignment of that contract knew that it was getting rights against the state, and in the exercise of the normal due diligence for a

substantial transaction would have looked up any state laws that might limit those rights—for it is well known that government entities are subject to all sorts of legal restrictions that private contracting parties are not. (One must "turn square corners" in dealing with the government, it used to be said.) A responsible search would have discovered sections 10.05 and 10.06 of the Illinois Comptroller Act and so Daiwa would have learned that the state reserved a right to set off debts against money that it owed to providers of services to the state, such as Doctors Hospital. There are an enormous number of state laws, and it might be unreasonable to expect a person taking an assignment of a contract with the state to determine in advance the possible bearing of all of them. Not that ignorance of law is a defense (usually; there are of course exceptions, such as the one discussed in *Cheek v. United States*, 498 U.S. 192, 199-200 (1991)); but the question is not whether the law is known; it is whether it gets incorporated into all contracts. A right of setoff, however, is the kind of thing that one expects to find in a contract, whether put there by agreement of the parties or implied in the contract by operation of law. Statutory setoff rights are a commonplace of contract law. *Lincoln Towers Ins. Agency, Inc. v. Boozell, supra*, 684 N.E.2d at 903-04; *Selcke v. New England Ins. Co., supra*, 995 F.2d at 689. Daiwa cannot plead surprise.

The last case we cited, *Selcke*, concerned an Illinois statute that created a mutual right of setoff between insurance companies. We held, citing Illinois cases, that the statute created an implied term in contracts between such companies. The effect was to give each company what amounted to a secured interest, and that effect is particularly pronounced in the present case, where, assuming as we have held that the Comptroller Act creates an implied term, the account debtor (the state) trumps a secured creditor (the assignee of the account creditor's accounts receivables). We

do not have the situation in which a statute is so far afield of matters of normal interest to contracting parties that they would not have thought it would affect the terms of their contract. Cf. *Bank of America, N.A. v. Moglia, supra*, 330 F.3d at 948; *Schiro v. W.E. Gould & Co., supra*, 165 N.E.2d at 290. It is conceivable that such statutes would not be deemed to create implied contractual terms, though unlikely in view of such commonplace judicial remarks as that "as a general principle of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract. It is presumed that parties contract with knowledge of the existing law." *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1303 (Ill. 1997) (citations omitted); to the same effect see, e.g., *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 973 (Ill. 1997); *Lincoln Towers Ins. Agency, Inc. v. Boozell, supra*, 684 N.E.2d at 903-04; *McMahon v. City of Chicago*, 789 N.E.2d 347, 350 (Ill. App. 2003). The presumption is artificial, but to the extent that it states the policy of Illinois law, we are of course bound. Although Daiwa cites eleven reported cases that it claims stand for the proposition that Illinois does not automatically allow statutes to create implied contractual terms, only one of those cases, a diversity decision by this court, refused to allow the statute in question to be used to create an implied term, *Johnson v. Levy Organization Development Co.* 789 F.2d 601, 609 (7th Cir. 1986), and there is no discussion of the basis of this ruling, which was merely made in passing in the opinion.

This case is even stronger for reading the statute into the contract than *Selcke* was, because a decision against the state might precipitate an effort to amend the UCC to create a new defense assertible by the state account debtor against the assignee. Illinois wants its taxes; but under the approach espoused by Daiwa the only way it can get them from an assignee when the taxpayer-assignor is insolvent is to amend the UCC. Granted, this is something of an overstate-

ment, since the state can include an express setoff clause in all its contracts. But it would be likely to fear slippage—a state enters into thousands of contracts every year and cannot guarantee that its contract officers will always include a particular term. (This is why estoppel rights are so much more limited against public than against private entities.) Any state can amend its statute adopting the UCC, but such amendments are to be discouraged because they undermine the UCC's goal of nationwide uniformity.

Against this Daiwa argues that if the Comptroller Act is held inapplicable to assignments governed by the UCC, assignees will have the same rights whether their debtor is the state or a private individual. But the uniformity that the UCC seeks to foster is uniformity in the rules governing commercial transactions, not uniformity in the transactions themselves. The parties are free to make their own contract—and the state is free is to tell them that contracts to which it is a party must contain a provision allowing the state to offset taxes or other money due it against any money it owes under the contract. The State of Illinois told its contract parties this by enacting sections 10.05 and 10.06; it is as if every contract with the state contained the setoff provision as part of the contract's boilerplate.

All this said, we cannot feel utterly confident of the soundness of our ruling when we consider the number of cases that have treated statutory setoff rights in favor of the state under section 318(1)(b) and the fact that very little "work" is left for that subsection to do if such rights are deemed implied terms of every contract made by the state. Prudence therefore moves us to consider whether, if we are wrong in the analysis to this point, the state might nevertheless prevail, on the theory that the Comptroller Act, to the extent inconsistent with the UCC (as it would be if the Act creates an absolute right of setoff in favor of the

state against assignees and the UCC a right only if the obligation giving rise to the setoff arises before notice of the assignment), takes precedence. The parties ground their arguments on which statute takes precedence on the principle of statutory interpretation that repeals by implication are disfavored. Like so many of the familiar "canons" of statutory interpretation, however, this one is shaky. If two statutes conflict, why would the legislature that enacted the second want the first—the handiwork of an earlier legislature with doubtless many different members from the later legislature—to take precedence? Criticizing the canon in *Edwards v. United States*, 814 F.2d 486, 488 (7th Cir. 1987), we said that it "rests on an unrealistic premise about the legislative process. The premise is that when a legislature contemplates passing a new statute it is careful to search the statute book for any statute that might overlap the new one, and if it finds any such older statute *and* doesn't want to continue that statute in force it repeals it explicitly when passing the new one. 'The presumption against implied repeals is founded upon the doctrine that the legislature is presumed to envision the whole body of the law when it enacts new legislation.' 1A Sutherland *Statutory Construction* § 23.10, at p. 346 (4th ed. 1985). But, of course, neither Congress nor any other legislature in the United States 'envision[s] the whole body of the law when it enacts new legislation.' Cf. *Barrett v. United States*, 423 U.S. 212, 223-24 (1976). How could it, given the vast expanse of legislation that has never been repealed and the even vaster expanse of judicial and administrative rulings glossing that legislation?"

But maybe the real justification for the canon has nothing to do with trying to reconstruct legislators' intentions. Maybe it is just intended to limit judicial discretion. *Friedrich v. City of Chicago*, 888 F.2d 511, 516 (7th Cir. 1989), vacated and remanded for reconsideration, 499 U.S. 933 (1991). We

need not wade farther into these deep waters, however, since, as we noted earlier, because of the complex pattern of enactment and reenactment of the statutes in question, the principle that repeals by implication are disfavored cannot be used to decide this case.

Deprived of that crutch, we nevertheless think it reasonably clear that the Illinois legislature did mean the Comptroller Act to trump the UCC in a case such as this. The main significance of setoff is found in cases of insolvency; if the obligor is solvent, it usually will not make a critical difference whether the obligee recovers from him by way of setoff or in an independent suit. Setoff rights mainly operate to create priorities in bankruptcy. It is apparent from the emphatic language of section 10.06 ("no sale, transfer or assignment of any claim or demand against the state, or right to a warrant on the treasurer, shall prevent or affect the right of the comptroller to make the deduction and offset provided in the foregoing section") that the Illinois legislature meant to give the state priority over assignees of state contracts in the event of bankruptcy. That specific intention overrides the provisions of the UCC, which give no special weight to the interests of the state. *Knolls Condominium Ass'n v. Harms,* 781 N.E.2d 261, 267 (Ill. 2002); *Buffum v. Chase National Bank,* 192 F.2d 58, 61 (7th Cir. 1951). We conclude, therefore, that by either analytic route—implied contractual term or statutory precedence—the state prevails in this case. The judgment of the district court is therefore

AFFIRMED.

A true Copy:

Teste:

                                         _____
                                      *Clerk of the United States Court of*
                                          *Appeals for the Seventh Circuit*