In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2389

PEGGY BERG,

*Plaintiff-Appellant,*

*v.*

SOCIAL SECURITY ADMINISTRATION,

*Defendant-Appellee.*

Appeal from the United States Bankruptcy Court for the
Western District of Wisconsin.
Nos. 3:14-BK-13435 & 3-16-00089-cjf —
**Catherine J. Furay**, *Bankruptcy Judge.*

ARGUED FEBRUARY 7, 2018 — DECIDED AUGUST 17, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Shortly before Peggy Berg filed a petition for bankruptcy, the Social Security Administration ("SSA" or "Agency") reduced the payment of a back-award that it owed to her by the amount of an earlier overpayment that Berg owed to the Agency. Berg contested this setoff

because it was taken during the ninety-day period before the filing of her bankruptcy petition. The bankruptcy court concluded that SSA permissibly recovered $17,385 of its overpayment but impermissibly improved its position by $2,015, and ordered the Agency to return that amount to Berg. This court granted a petition to file a direct appeal from the bankruptcy court. We now affirm the judgment of the bankruptcy court.

## I.

The facts are undisputed. Berg began receiving Social Security disability benefits in June 1994. In 2002, she returned to work. Although she notified the Agency that she was working again, SSA continued to pay her benefits until December 2003. The Agency subsequently determined that it overpaid Berg in the amount of $25,690. An administrative law judge determined that Berg was without fault in incurring this overpayment, but that SSA could nevertheless recover the overpayment under the terms of the Social Security Act. Based on Berg's income and ability to pay, the administrative law judge ordered her to repay $24,000 to the Agency at a rate of $300 per month. Berg did not appeal that decision and began making payments.

Berg stopped working again on November 17, 2012 but continued to make regular, smaller payments towards her SSA debt. In March 2014, Berg filed a new application for disability benefits. Because of Berg's age and condition, SSA gave priority consideration to her case and granted her application on July 15, 2014. The Agency determined that Berg met the criteria for disability benefits as of November 17, 2012, the date

that she stopped working. Under the Social Security Act and the applicable regulations, Berg's benefits began to accrue in May 2013, after a five month waiting period, and became payable at the end of that month.

By July 2014, Berg had reduced the debt that she owed to the Agency to $19,400. In a Notice of Award letter ("Notice") dated July 30, 2014, the SSA informed Berg that she was entitled to disability benefits beginning in May 2013, and that she would receive her first check in August 2014. According to the Notice, Berg had accrued benefits at a rate of $1,440 per month from May to November 2013, and at an increased rate of $1,461 from December 2013 through July 2014, due to a cost-of-living adjustment. Her accumulated benefits from May 2013 through July 2014 totaled $20,307. The Notice explained that the SSA would deduct from that total the $19,400 that Berg still owed from the Agency's earlier overpayment. In early August 2014, Berg received a check for $907. The SSA subsequently denied a request from Berg to reconsider the Agency's decision to recover its earlier overpayment from her back-award.

On August 7, 2014, Berg filed a petition for bankruptcy. She listed the $19,400 that the SSA recovered from her as a setoff in her Statement of Financial Affairs, and also included that same amount as a possible asset subject to recovery in her schedules. 11 U.S.C. § 553. She then commenced an adversary proceeding against the SSA under 11 U.S.C. §§ 553(b) and 522(h), seeking recovery of the amount of back-benefits set off by the SSA. The bankruptcy court found that the elements for setoff under the bankruptcy code were present. Specifically, the SSA had a pre-petition claim against Berg for return of its earlier overpayment; SSA owed a pre-petition debt to Berg because of the

award of back-benefits; the obligations were mutual; and both the claim and the debt were valid and enforceable. 11 U.S.C. § 553(a); *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003) (setoffs are allowed when debts are mutual and "the general rule is that mutuality is satisfied when the offsetting obligations are held by the same parties in the same capacity (that is, as obligor and obligee) and are valid and enforceable, and (if the issue arises in bankruptcy) both offsetting obligations arise either prepetition or postpetition, even if they arose at different times out of different transactions.").

The bankruptcy court noted that a trustee, or as was the case here, a debtor acting under 11 U.S.C. § 522(h), may recover a setoff under 11 U.S.C. § 553(b)(1), to the extent that a creditor improved its position within the ninety days preceding the debtor's filing of the bankruptcy petition. This ninety-day preference test allows the trustee or debtor to recover from the creditor the amount offset to the extent that the insufficiency on the setoff date is less than the insufficiency on the later of (a) ninety days before the petition filing date, and (b) the first date on which there was an insufficiency during the ninety days immediately preceding the petition date. "Insufficiency," the court explained, is the amount by which a creditor's claim exceeds the amount of its debt. *See* 11 U.S.C. § 553(b)(2) ("'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim."). The date ninety days prior to Berg's August 7, 2014 filing was May 9, 2014. The court calculated that Berg's total accrued disability benefit as of May 9, 2014 was $17,385. That same day, Berg owed the

Agency $19,400. That meant that on May 9, 2014, the insufficiency was $2,015. The court then compared that amount with the insufficiency on the date that the SSA took the setoff, July 30, 2014. By then, Berg still owed the Agency $19,400, but the SSA owed her $20,307. That meant that there was no insufficiency on July 30, 2014 (because the SSA's debt to Berg was now larger than the amount that she owed the SSA), and the SSA had improved its position in the amount of $2,015 during the ninety-day preference period. The court therefore concluded that the SSA was entitled to keep $17,385 and ordered the Agency to return $2,015 to Berg. Berg appealed.

## II.

Although Berg moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, the parties submitted a pre-trial statement of stipulated facts and the court relied on that statement in reaching its judgment. This is akin to judgment under Federal Rule of Civil Procedure 52(a). *Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan*, 687 F.3d 320, 327 (7th Cir. 2012) (when parties agree to judgment based on stipulated facts, in effect, the court is asked to decide the case as if there had been a bench trial in which the evidence was the material gathered in discovery, and the standard of review is governed by Federal Rule of Civil Procedure 52(a)); *Arlington LF, LLC v. Arlington Hospitality, Inc.*, 637 F.3d 706, 717 (7th Cir. 2011) (Federal Rule of Bankruptcy Procedure 7052 makes Federal Rule of Civil Procedure 52 applicable to adversarial bankruptcy proceedings). We review the district court's legal conclusions *de novo* and any factual inferences that the court drew from the stipulated facts as well as its application of the facts to the law for clear error. *Marantz*, 687 F.3d at

327. *See also Lardas v. Grcic*, 847 F.3d 561, 569 (7th Cir. 2017) (after a bench trial on an adversary proceeding, we review the bankruptcy court's legal determinations *de novo* and its findings of fact for clear error).

On appeal, Berg contends that there were no benefits from which the SSA could take an offset until the Agency issued the Notice of Award letter on July 30, 2014. According to Berg, before that Notice was issued, she had no right to a back-award and the benefits awarded therefore accrued on the day that the Notice was issued and the setoff was taken. The bankruptcy court erred, she contends, by treating the back-benefits as accruing over time, month by month, rather than as a lump sum on the date that the Agency made the award, July 30, 2014. Berg also argues that the case law supports her position, and that public policy also favors treating the date of the Notice as the date that her benefits accrued. If the benefits accrued on July 30, 2014, Berg maintains, then the Agency improved its position by the entire amount of the offset during the ninety-day preference period and she would be entitled to recoup $19,400. We conclude that Berg's interpretation of the law is incorrect.

The Social Security Act provides that a person who has worked long enough, has paid taxes into the system, and is "under a disability," "*shall be entitled* to a disability insurance benefit (i) *for each month* beginning with the first month after his waiting period … in which he becomes so entitled to such insurance benefits[.]" 42 U.S.C. § 423(a)(1) (emphasis added). Section 423(c)(2) specifies a five-month waiting period after the onset of disability before an eligible individual may receive her first disability payment. Even then, that individual does not

become entitled to payment of benefits for a particular month until she survives through the last day of that month. 42 U.S.C. § 402(a). The benefit for a particular month is paid on the third day of the month after the benefits accrue. The parties agree that Berg, who was disabled as of November 17, 2012, became entitled to receive disability payments as of May 2013, a payment that would have been made in the ordinary course on June 3, 2013.

The Social Security Act also provides that, when a benefits recipient has been overpaid, "recovery shall be made" by decreasing the benefit payments to which that person may be entitled. 42 U.S.C. § 404(a). But recovery from (or adjustments of payments to) a person who is without fault in incurring the overpayment may not occur if the "adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). *See also* 20 C.F.R. §§ 404.507–509. At a time when Berg had returned to work, an administrative law judge determined both that recovery of the overpayment would not defeat the purpose of the Social Security Act and that recovery was not against equity and good conscience. The Agency thus was obligated to recover the overpayment, and Berg did not appeal that ruling.[1]

The bankruptcy court correctly concluded that the transaction at issue here met the elements of a setoff under section 553 of the Bankruptcy Code. Under section 553(a), the overpayment to Berg meant that the Agency had a pre-petition claim

---

[1] That decision is no longer subject to judicial review. 42 U.S.C. § 405(g).

against Berg; the SSA's award of back-benefits resulted in the Agency owing a pre-petition debt to Berg; the obligations were mutual; and both the claim and the debt were enforceable. 11 U.S.C. § 553(a); *Doctors Hospital*, 337 F.3d at 955. "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). The right of setoff, the Court explained, allows entities to apply their mutual debts against each other to avoid the pointless exercise of "making A pay B when B owes A." *Citizens Bank*, 516 U.S. at 18 (citing *Studley v. Boylston Nat'l Bank of Boston*, 229 U.S. 523, 528 (1913)).

Section 553(b) sets the limits for a creditor's right of setoff during the ninety-day period prior to the filing of a bankruptcy petition:

> (1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, 561, 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

> (A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. § 553(b). In plain English—a commodity rarely found in the Bankruptcy Code—this means that a debtor like Berg[2] may recover from a creditor like the SSA an amount set off by the creditor in the ninety days preceding the filing of the bankruptcy petition but only to the extent that the creditor improved its position during that ninety-day period. That, in turn, depends on determining the difference between any insufficiency in the Agency's position ninety days before the bankruptcy filing and its position on the date of the setoff. Insufficiency, as the bankruptcy court noted, is the "amount, if any, by which a claim against the debtor [Berg] exceeds a mutual debt owing to the debtor by the holder of such claim [the SSA]." 11 U.S.C. § 553(b)(2).

The parties seem to agree in principle on the mathematical process that courts apply when calculating the insufficiency. *See, e.g., Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030,

---

[2]   Section 522(h) of the Bankruptcy Code allows the debtor to recover a setoff that is recoverable by the trustee under section 553 if the trustee does not herself attempt to recover it. 11 U.S.C. § 522(h). *See also Lee v. Schweiker*, 739 F.2d 870, 873 n.3 (3d Cir. 1984) (when the trustee does not pursue exempt assets, the assets are of no benefit to the creditors, and the debtor is empowered to intervene in the proceeding and pursue those assets).

1040 (5th Cir. 1987). The dispute comes instead in determining when SSA began to owe benefits to Berg. Although Berg characterizes the issue as when the setoff occurred, the real question is when Berg's benefits began to accrue after she filed her second application for disability benefits. Berg asserts that she had no right to benefits at all until the Agency determined in July 2014 that she was entitled to benefits and was owed back-benefits. The back-benefits, Berg contends, accrued on July 30, 2014 when the SSA issued the Notice awarding the benefits. In her view, then, the SSA improved its position by the entire $19,400 that it took in setoff during the ninety-day preference period. The SSA, on the other hand, contends that, although it did not issue its Notice until July 2014, Berg was disabled as of May 2013 and thus began to accrue benefits on a monthly basis at that earlier date. Under that scenario, the SSA improved its position by only $2,015 during the preference period, and that is the amount that should be returned to Berg.[3]

In support of her argument that she had no benefits from which to take an offset until the date of the Notice awarding those benefits, Berg relies largely on an unpublished decision from a bankruptcy court in North Carolina. *See In re Goodman*, 2012 WL 529574 (Bankr. E.D.N.C. Feb. 17, 2012). That court

---

[3] In a footnote in its brief, the SSA states that, for the purposes of this appeal, the Agency does not dispute the bankruptcy court's determination that Berg is entitled to recover $2,015 of the $19,400 in back-benefits that the SSA took in offset. In the bankruptcy court, the Agency took the position that it was entitled to recover the entire $19,400 because there was nothing the SSA could do in the ninety days pre-petition to improve its position. The Agency apparently wishes to preserve that argument for future cases but concedes the $2,015 calculation here.

assumed without analysis that the date of the award of back-benefits governed the calculation of the insufficiency, treating the date of the Agency's decision to award back-benefits as the date of accrual for the entire amount. The bankruptcy court here rejected that case in favor of the reasoning of the Third Circuit in *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984).

In *Lee*, the debtor was receiving monthly retirement benefits from the Agency. One year, she engaged in work that should have reduced her entitlement to benefits but the Agency was unaware that she had earned this income and continued to pay her retirement benefits at the higher rate, resulting in an overpayment of approximately $750. Lee reached an agreement with SSA to repay the overpayment by having the Agency reduce her monthly benefits by approximately $100 per month until the overpayment was recovered. Lee then filed for bankruptcy but SSA was not aware of the filing and continued to deduct $100 per month from Lee's benefit check. When the trustee did not seek to recover the amounts deducted, Lee filed an adversary proceeding to recover them herself.

The court first concluded that, once a bankruptcy petition is filed, "the income provided by Social Security benefits should be protected by the automatic stay," and that the "right of SSA to recover pre-petition debts should be subject to the limitations on setoff." 739 F.2d at 876. The court was then faced with calculating the insufficiency on the relevant dates, and that, in turn, depended on when SSA owed the debtor her benefits. The debtor asserted that, under the Social Security Act, a recipient does not become entitled to benefits for a particular month until she survives through the last day of that

month, and so the Agency would owe her nothing on August 15 for the month of August. 42 U.S.C. § 402(a). The court held that section 402(a) of the Social Security Act applied in the bankruptcy context as well. 739 F.2d at 877. The court then applied that provision to the debtor's claim:

> In order to accrue benefits, all the beneficiary must do is survive; if the debtor survives, SSA must pay. Under these circumstances, we believe that all of the monthly benefits that came due before the filing of the petition should be considered obligations of SSA to the beneficiary ninety days before the petition is filed for the purposes of applying the "improvement in position" test, even though they are not yet payable.

*Lee*, 739 F.2d at 877. In other words, the court found that the "SSA would be obligated to Lee for three months benefits … ninety days before the filing." 739 F.2d at 877 n.13. Under the facts in *Lee*, that meant that there was no insufficiency ninety days before the filing but an "'excess' of debts to the debtor over claims against the debtor." *Id*. Because there had not been an improvement in the SSA's position in the ninety days prior to the filing of the petition, the SSA was not required to return the amounts recouped before the petition was filed.

That understanding of Social Security benefits as accruing as soon as the recipient survives the month and is lawfully entitled to them is consistent with the Bankruptcy Code's concepts of "debt" and "claim" as they are used in section 553(b)(2). We have noted that, although the Bankruptcy Code does not specify when a debtor incurs a debt, the Code's

definitions of "debt" and "claim" aid our understanding. *In re Energy Co-op, Inc.*, 832 F.2d 997, 1001 (7th Cir. 1087). "The term 'debt' means liability on a claim." 11 U.S.C. § 101(12). The term "claim" is defined in relevant part as:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. § 101(5)(A). Under the Social Security Act, as the Third Circuit pointed out in *Lee*, a beneficiary has a right to payment of benefits as soon as the beneficiary survives to the end of the month that the beneficiary is eligible for benefits.[4] Under the Bankruptcy Code, it does not matter if that right to payment is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." The claim, and therefore the debt, accrue as soon as there is a right to benefits, a date determined in this instance by the Social Security Act itself.

When Berg filed an application for disability benefits in March 2014, she created an unliquidated, contingent claim against the SSA that related back to the (then undetermined) date that she became entitled to benefits. That date was later

---

[4] Lee was receiving retirement benefits under 42 U.S.C. § 401 *et seq.*, and Berg was receiving disability benefits under 42 U.S.C. § 423(a), but in either case the recipient must survive to the end of an eligible month to be entitled to payment of benefits for that month. 42 U.S.C. § 402.

determined to be May 2013, and neither party disputes that the SSA accurately calculated the amount of the back-award (starting on that date) in its Notice. The bankruptcy court thus correctly calculated the accrual of Berg's benefits as occurring on the dates that she had a right to benefits, or the last day of each month that she was eligible for benefits and survived to the end of the month. On May 9, 2014, the date that was ninety days prior to the filing of the petition, that amount was $17,385. Because Berg then owed the Agency $19,400, the insufficiency on May 9, 2014 was $2,015. On July 30, 2014, the date the SSA took the setoff, Berg still owed the Agency $19,400, but the SSA owed her $20,307. That meant that there was no insufficiency on July 30, 2014, and the SSA had improved its position in the amount of $2,015 during the ninety-day preference period. That is the amount that Berg may now recover.

There is no basis in policy to conclude otherwise. First, section 553 does not bar setoffs entirely but simply prevents a creditor from improving its position during the ninety-day pre-petition period. This limit on setoffs was imposed in order to allow the trustee to recover setoffs that improved the position of one creditor at the expense of all the others during the ninety-day period prior to bankruptcy. *Matter of Prescott*, 805 F.2d 719, 730 (7th Cir. 1986). As the Third Circuit explained in *Lee*, Congress was concerned that creditors, primarily banks that had mutual accounts with debtors, would anticipate the filing of a bankruptcy petition and attempt to secure an advantage for themselves by decreasing an insufficiency to the detriment of other creditors. *Lee*, 739 F.3d at 877. That same concern does not apply to the Agency's recovery of overpay-ments because neither the debtor nor the SSA can do anything

to increase the amount of benefits that will accrue during the ninety-day pre-petition period. Essentially, neither party can manipulate the process to the detriment of other creditors. Recognizing the creation of SSA's contingent debt to Berg on the date when Berg became entitled to disability benefits (and accruing it monthly thereafter) rather than using the arbitrary date that the Agency issued its administrative decision is consistent with both the Social Security Act and the Bankruptcy Code.

AFFIRMED.